UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSHUA JONES | * | CIVIL ACTION NO: 3:21-cv-00419 |
| Plaintiff | * | |
| | * | |
| VS. | * | JUDGE BRIAN A. JACKSON |
| | * | |
| UNITED RENTALS (NORTH AMERICA), | * | MAGISTRATE JUDGE RICHARD L. |
| INC. and UNITED RENTALS, INC. | * | BOURGEOIS, JR. |
| Defendants | * | |
| | * | |
| *   *   *   *   *   *   * | | |

### MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Plaintiff, Joshua Jones, submits the following Memorandum in Support of his Motion for Summary Judgment:

### INTRODUCTION

Plaintiff, Joshua Jones, filed this lawsuit against Defendants, United Rentals (North America, Inc.) and United Rentals, Inc., seeking a declaratory judgment regarding the enforceability of certain restrictive covenants contained in a February 18, 2013 Employment Agreement between Plaintiff and Defendants. Plaintiff's Motion for Summary Judgment asks the Court to interpret certain provisions in the Agreement and to declare those provisions unenforceable pursuant to La. Rev. Stat. § 23:921.  In addition, based on the undisputed factual allegations of the Petition, Plaintiff also asks the Court to declare that Defendants are equitably estopped under Louisiana law from enforcing one of the provisions in the Agreement.  Because resolution of these issues involves purely questions of law and no genuine issues of material fact, no discovery on these issues is necessary under Fed. R. Civ. P. 56(d), and judgment should be entered in Plaintiff's favor.

**1**

## FACTUAL BACKGROUND

In August of 2010, Plaintiff began working at RSC Equipment Rental as an Inside Sales Representative. *See* Exhibit 1 at ¶ 5; *see also* Defendant's Answer, Doc. No. 6 at ¶ 5; *see also* Declaration of Joshua Jones, Exhibit 2 at ¶ 3. RSC was subsequently acquired by United Rentals (North America), Inc. in November of 2011, and Plaintiff thereafter became an employee of United Rentals (North America), Inc. *See* Exhibit 1 at ¶ 6; *see also* Doc. No. 6 at ¶ 6; *see also* Exhibit 2 at ¶ 4. At all times during Plaintiff's employment with Defendants, he resided and worked in the State of Louisiana. *See* Exhibit 1 at ¶ 1, 5-7; *see also* Doc. No. 6 at ¶ 1, 5-7; *see also* Exhibit 2 at ¶ 5.

In early 2021, Plaintiff began considering a new opportunity with EquipmentShare, a competitor of Defendants. *See* Exhibit 1 at ¶ 8; *see also* Doc. No. 6 at ¶ 8; *see also* Exhibit 2 at ¶ 6. Therefore, on February 25, 2021, Mr. Jones emailed United Rentals' Human Resources Director, Tamara Landry, to request a copy of any non-compete agreements he may have in place with United Rentals. *See* Exhibit 1 at ¶ 9; *see also* Doc. No. 6 at ¶ 9; *see also* Exhibit 2 at ¶ 7. The reason for Mr. Jones' request was so that he could make an informed decision about whether or not he should pursue the new employment opportunity with EquipmentShare. *Id.* More specifically, Mr. Jones was attempting to diligently evaluate whether he had any restrictive covenants in place with United Rentals that would have a material impact on whether he should pursue the new employment opportunity with EquipmentShare. *Id*.

On March 3, 2021, United Rentals' Human Resources Director, Tamara Landry, informed Mr. Jones that United Rentals was "unable to locate your legacy employment agreement with

RSC" and, therefore, "we will be asking you to sign a new agreement." *See* Exhibit 1 at ¶ 10; *see also* Doc. No. 6 at ¶ 10 *see also* Exhibit 2 at ¶ 8.

Relying on United Rentals' representations that it could not locate any agreement or existing restrictive covenants, as well as the fact that United Rentals asked him to sign a new agreement, Mr. Jones concluded that there was no contractual reason why he could not work for EquipmentShare. *See* Exhibit 1 at ¶ 11; *see also* Doc. No. 6 at ¶ 11; *see also* Exhibit 2 at ¶ 9. After weighing his options, Mr. Jones ultimately concluded that it was in his and his family's best interest that he not sign a new agreement with United Rentals, and he should instead resign from his employment with United Rentals and pursue the new opportunity with EquipmentShare. *See* Exhibit 1 at ¶ 11; *see also* Doc. No. 6 at ¶ 11; *see also* Exhibit 2 at ¶ 10. By March 9, 2021, Plaintiff had signed an offer letter with EquipmentShare and thereafter began working as a Territory Account Manager based out of Harvey, Louisiana in Jefferson Parish, on March 16, 2021. *See* Exhibit 1 at ¶ 11; *see also* Doc. No. 6 at ¶ 11; *see also* Exhibit 2 at ¶ 11.

On April 8, 2021, Mr. Jones received a letter from Karen C. Denney, an attorney with the law firm of Haynes Boone in Fort Worth, Texas. *See* Exhibit 1 at ¶ 13-14; *see also* Doc. No. 6 at ¶ 13-14; *see also* Exhibit 2 at ¶ 12. Enclosed with the letter was a copy of what purports to be an Employment Agreement ("the Agreement") between Mr. Jones and the Defendants that had previously been entered into eight (8) years ago on February 18, 2013. *Id.*

Relying on the "newly discovered" Agreement, Ms. Denney, on United Rentals' behalf, made several demands on Mr. Jones, including that: "(1) you immediately cease and desist from any violation of your Agreement, including, without limitation, not being employed by a competitor in the Restricted Area; (2) you immediately provide your assigned location, duties and responsibilities related to your new position with EquipmentShare; (3) you immediately return all

**3**

United Rentals Confidential Information and other property in your possession, including any USB or other device containing any United Rentals Trade Secrets or confidential information, as required by your Agreement, and (4) you contact me before April 12, 2021 and confirm that you have returned all United Rentals Confidential Information and other property in your possession and will comply with your Agreement." *See* Exhibit 1 at ¶ 14; *see also* Doc. No. 6 at ¶ 14; *see also* Exhibit 2 at ¶ 12.

Mr. Jones is not in possession of or using any of United Rentals' confidential information or trade secrets, as those terms are defined under applicable law. *See* Exhibit 1 at ¶ 15; *see also* Doc. No. 6 at ¶ 15; *see also* Exhibit 2 at ¶ 13.

Ms. Denney, on United Rentals' behalf, also threatened legal action against Mr. Jones: "If you do not comply with your Agreement, United Rentals will be forced to take all necessary actions to preserve its legal rights, including, without limitation, filing a lawsuit against you seeking specific performance, injunctive relief, damages, attorneys' fees, costs, expenses, and all other remedies available to United Rentals in equity and at law." *See* Exhibit 1 at ¶ 16; *see also* Doc. No. 6 at ¶ 16; *see also* Exhibit 2 at ¶ 12.

Concerned by the tone of the letter and the newly discovered Agreement, Mr. Jones immediately forwarded Ms. Denney's letter to EquipmentShare. *See* Exhibit 1 at ¶ 17; *see also* Doc. No. 6 at ¶ 17. EquipmentShare's in-house legal counsel contacted Ms. Denney to educate her on Mr. Jones' prior exchange with United Rentals' Human Resources Director, including the fact that he was informed that United Rentals could not locate any Agreement. *Id*.

In response, Ms. Denney suggested that just because United Rentals could not locate the Agreement did not negate the fact that there was a noncompetition agreement in place. *See* Exhibit 1 at ¶ 18; *see also* Doc. No. 6 at ¶ 18. Ms. Denney also took the position that the onus was actually

on Mr. Jones—for a period of eight (8) years—to retain and maintain a copy of the Agreement for his own records. *Id.*

Mr. Jones has no recollection of ever receiving a copy of the Agreement, and he was not in possession of the Agreement prior to receiving Ms. Denney's letter. *See* Exhibit 1 at ¶ 19; *see also* Doc. No. 6 at ¶ 19; *see also* Exhibit 2 at ¶ 14.

Out of an abundance of caution, Mr. Jones has refrained from performing any work for EquipmentShare in East Baton Rouge, Livingston, or Ascension parishes since receiving Ms. Denney's letter. *See* Exhibit 2 at ¶ 15. Not being able to work in these parishes has inhibited Mr. Jones' ability to generate revenue for EquipmentShare, which in turn is having a direct impact on his annual compensation. *Id.*

## THE NEWLY DISCOVERED EMPLOYMENT AGREEMENT

The Agreement enclosed with Ms. Denney's letter refers to Plaintiff as "Employee" and refers to Defendants, collectively, as "the Company." *See* Exhibit 1, at Attachment C in "Recitals." The Agreement specifically states that "Employee is or will be employed by the Company" and that he "is employed on at-will basis." *Id.* in "Recitals" and ¶ 1(a).

Paragraph 3 of the Agreement, entitled "Non-Compete Provisions," includes various restrictive covenants. *Id.* at ¶ 3. Paragraph 3(a)(ii) of the Agreement states that:

(a)   During Employee's employment by the Company and for a period of 12 months immediately following the termination of employment for any reason whatsoever, (whether for cause, by resignation or otherwise) Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):

   […]

   (ii)   solicit the business of, or call upon, or conduct business with any person or entity, or affiliate of any such person or entity, who or which is or was a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company

5

>> or who was a prospect for a business relationship with the Company at any time during the period of the Employee's employment, for the purpose of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by the Company[.]

*Id.* ¶ 3(a)(ii). And, Paragraph 3(a)(vi) of the Agreement states that:

> (a) During Employee's employment by the Company and for a period of 12 months immediately following the termination of employment for any reason whatsoever, (whether for cause, by resignation or otherwise) Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):
>
> […]
>
> (vi) own any interest in or by employed by or provide any services to any person or entity, which engages in any Competing Business[.]

*Id.* at ¶ 3(a)(vi). The Agreement defines a "Competing Business" as "one which engages in the same or substantially similar business as the Company's Business." *Id.* at ¶ 3(a)(i). The Agreement defines the Company's "Business" as "[t]he businesses in which the Company is at any time engaged, to any extent[.]" *Id.* at "Recitals." Further, Paragraph 3(d) of the Agreement states that:

> (d) All time periods in this Agreement shall be computed by excluding from such computation any time during which Employee is in violation of any provision of this Agreement and any time during which there is pending in any court of competent jurisdiction any action (including any appeal from any final judgment) brought by any person, whether or not a party to this Agreement, in which the Company seeks to enforce the agreements and covenants in this Agreement or in which any person contests the validity of such agreements and covenants or their enforceability or seeks to avoid their performance or enforcement.

*Id.* at p. 47, ¶ 3(d).

Additionally, Paragraph 9(g) of the Agreement contains a choice of law clause, providing that:

> (g) This Agreement shall in all respects be constructed according to the laws of the State of Connecticut, without regard to its conflict of laws principals.

**6**

*Id.* at p. 51, ¶ 9(g). Moreover, Paragraph 5(a) of the Agreement, entitled "Consent to Personal Jurisdiction," contains a forum selection clause, providing, in pertinent part that:

> (a)   Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut….

*Id.* at p. 49, ¶ 5(a).

Finally, Paragraph 9(f) of the Agreement preserves the right of either party to pursue equitable remedies:

> (f)   All rights and remedies of either Party expressly set forth herein are intended to be cumulative and not in limitation of any other right or remedy set forth herein or otherwise available to such party at law or in equity.

## **LAW AND ARGUMENT**

Pursuant to Rule 56, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). In doing so, the moving party may identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). The district court is required to grant a motion for summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The moving party may accomplish this by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1). The district court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the non-moving party asserts that it needs more time for discovery to respond the a motion for summary judgment, the non-moving party *must* demonstrate, by affidavit or declaration, (1) "why he needs additional discovery" and (2) "how the additional discovery will create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(d); *see also O'Connor v. Smith*, 427 F. App'x 359, 368 (5th Cir. 2011).

If the moving party meets its burden, the non-moving party must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1); *see also Fernandez v. Tamko Bldg. Prods., Inc.*, 2 F. Supp. 3d 854, 857 (M.D. La. 2014). The non-movant's burden may *not* be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Id.* A court will not, in the absence of any proof, assume that the non-movant could or would prove the necessary facts. *Id.* at 858.

Pertinently, summary judgment is available in actions for declaratory judgment, as in any other types of actions. *See* 10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2768 (4th ed. & database updated April 2021). Courts routinely grant summary judgments on issues regarding contractual interpretation. In this respect, "[w]hen a contract can be construed within its four corners, interpretation of the contract presents a question of law that can be decided on summary judgment." *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012). "In the context of contractual interpretation, <u>only</u> when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc.*, 180 F.3d 664, 669 (5th Cir. 1999) (emphasis added).

### A. Louisiana law governs the enforceability of the Agreement, and the Agreement's choice of law and forum selection clauses are null, void, and unenforceable under La. Rev. Stat. § 23:921(A)(2).

In determining whether certain restrictive covenants in the Agreement are enforceable by Defendants, the first issue to resolve is what law governs the Agreement. Paragraph 9(g) of the Agreement contains a choice of law provision designating Connecticut law as governing the Agreement. *See* Exhibit 1 at attachment C, ¶ 9(g). And, Paragraph 5(a) of the Agreement contains a forum selection clause providing for resolution of disputes arising out of the Agreement in

Connecticut state and federal courts. *Id.* at p. 49, ¶ 5(a). But both of these provisions violate Louisiana's express prohibition of choice of law and forum selection clauses in employment contracts. As such, Louisiana law governs the enforceability of the Agreement, and Plaintiff properly filed this lawsuit in a Louisiana court.

Louisiana Civil Code Article 14 states, "[u]nless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code." La. Civ. Code art. 14. With regard to conventional obligations, Book IV of the Civil Code contains the following applicable provisions:

> Article 3537 provides:
>
> Except as otherwise provided in this Title, <u>an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.</u>
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537 (Emphasis added). Additionally, Article 3540 provides:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

La. Civ. Code art. 3540.

It is undisputed that Plaintiff resided and worked in Louisiana for the Defendants. Although Louisiana generally recognizes and honors party autonomy with respect to choice of law provisions, such contractual stipulations are not honored where "there are legal or 'strong public

9

policy considerations' justifying the refusal to honor the contract as written." *NCH Corp. v. Broyles*, 749 F.2d 247, 251 (5th Cir. 1985). Similarly, "[f]orum selection clauses will be upheld unless they contravene strong public policy of the forum in which the suit is brought." *Bell v. Rimkus Consulting Grp., Inc. of La.*, 07-996, p. 11 (La. App. 5 Cir. 3/25/08); 983 So. 2d 927, 983 So. 2d at 932.

La. Rev. Stat. § 23:921(A)(2) is such an expression of strong Louisiana public policy. *O'Hara v. Globus Med., Inc.*, 2014-1436, pp. 16-17 (La. App. 1 Cir. 8/12/15); 181 So. 3d 69, 80-81; *Bell*, 983 So. 2d at 932. That provision of the statute states:

> (2) The provisions of *every employment contract or agreement*, or provisions thereof, by which any foreign or domestic employer or any other person or entity *includes a choice of forum clause or a choice of law clause in an employee's contract of employment* or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, *shall be null and void* except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to *and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action*.

*See* La. Rev. Stat. 23:921 (emphasis added).

Here, the Agreement unequivocally identifies itself as the "Employment Agreement" and Plaintiff as "Employee." The provisions of La. Rev. Stat. § 23:921(A)(2) prohibit choice of law and forum selection clauses in an employee's employment contracts or agreements. Thus, the Connecticut choice of law clause in Paragraph 9(g) of the Agreement is null, void, and unenforceable because it contravenes Louisiana public policy. For the same reasons, the Connecticut forum selection clause in Paragraph 5(a) of the Agreement is null, void, and unenforceable because it contravenes Louisiana public policy.

Furthermore, Plaintiff never ratified Paragraphs 9(g) or 5(a) of the Agreement. To the contrary, Plaintiff filed this lawsuit seeking a declaration that, among other things, the choice of

**10**

law and forum selection clauses in Paragraph 9(g) and 5(a), respectively, of the Agreement are null, void, and unenforceable under La. Rev. Stat. § 23:921(A)(2). Thus, Louisiana law, rather than Connecticut law, governs the enforceability of the Agreement, and Plaintiff properly filed this lawsuit in a Louisiana court.

> **B.    The customer non-solicit clause in Paragraph 3(a)(ii), the non-compete clause in Paragraph 3(a)(vi), and the tolling provision in Paragraph 3(d) are null, void, and unenforceable because these provisions fail to comply with the strict requirements of La. Rev. Stat. § 23:921(C).**

Because Louisiana law governs the enforceability of certain restrictive covenants in the Agreement, the next issue to resolve is whether these restrictive covenants violate Louisiana law. Louisiana has historically had a strong public policy against non-compete agreements. *Louisiana Smoked Prods., Inc. v. Savoie's Sausage and Food Prods., Inc.*, 96-1716, p. 11 (La. 7/1/97); 696 So. 2d 1373, 1379. "Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *O'Hara*, 181 So. 3d at 81. Thus, "[b]ecause such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id.* (citing *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695, p. 5 (La. 6/29/01); 808 So. 2d 294, 298).

This public policy is expressed in La. Rev. Stat. § 23:921, which provides, in pertinent part, as follows:

> A.(1) *Every contract or agreement*, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, *except as provided in this Section, shall be null and void*. However, every contract or agreement, or provision thereof, which *meets the exceptions as provided in this Section*, *shall be enforceable*.
>
> […]
>
> C. *Any person*, including a corporation and the individual shareholders of such corporation, *who is employed as an agent, servant, or employee may agree with his*

**11**

> *employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment*.

*See* La. Rev. Stat. § 23:921(A)(1), (C) (emphasis added).

An agreement limiting competition must *strictly comply* with the requirements of La. Rev. Stat. § 23:921. *Kimball v. Anesthesia Specialists of Baton Rouge, Inc.*, 00-1954, p. 6 (La. App. 1 Cir. 9/28/01); 809 So. 2d 405, 411; *Bell*, 983 So. 2d at 933. By its plain terms, La. Rev. Stat. § 23:921(A)(1) declares all restraints on trade to be *null and void* unless one of the enumerated exceptions set forth in the statute is satisfied. The relevant exceptions here are the strict geographic and time restrictions authorized by La. Rev. Stat. § 23:921(C). There are three provisions in the Agreement that fail to comply with these strict requirements: (1) the customer non-solicit clause in Paragraph 3(a)(ii); (2) the non-competition clause in Paragraph 3(a)(vi); and (3) the tolling provision in Paragraph 3(d). Consequently, each of these provisions is null, void, and unenforceable.

> **1. The customer non-solicit clause in Paragraph 3(a)(ii) and the non-competition clause in Paragraph 3(a)(vi) are null, void, and unenforceable because they fail to include any geographic restrictions, in violation of La. Rev. Stat. § 23:921(C).**

Initially, two of the restrictive covenants in the Agreement violate La. Rev. State. § 23:921(C) because they fail to include any geographic restrictions. Specifically, Paragraph 3(a)(ii) of the Agreement seeks to prevent Plaintiff from soliciting Defendants' customers. *See* Exhibit 1 at attachment C, ¶ 3(a)(ii). And Paragraph 3(a)(vi) of the Agreement seeks to prevent Plaintiff from owning any interest in, being employed by, or providing any services to any competitor of Defendants. *Id.* at ¶ 3(a)(vi).

Among the exceptions to Louisiana's general prohibition of restrictive covenants includes agreements between an employee and his employer to refrain from competing or soliciting customers in a specified "*parish or parishes, municipality or municipalities, or parts thereof*...." La. Rev. Stat. § 23:921(C) (emphasis added). Indeed, a non-competition and customer non-solicitation agreement "*must specifically name the parishes or municipalities in which the agreement is to have effect*." *Vartech Sys., Inc. v. Hayden*, 2005-2499, p. 11 (La. App. 1 Cir. 12/20/06); 951 So. 2d 247, 258 (citing *Turner Professional Servs., Ltd. v. Broussard*, 99-2838, pp. 4-5 (La. App. 1 Cir. 5/12/00); 762 So. 2d 184, 186).

Significantly, the customer non-solicitation and non-compete clauses in Paragraphs 3(a)(ii) and 3(a)(vi), respectively, fail to list <u>any</u> parishes or municipalities where the competition or customer solicitation is prohibited. Moreover, neither provision even attempts to include any type of geographic restriction. Consequently, because the restrictive covenants in Paragraphs 3(a)(ii) and 3(a)(vi) of the Agreement fail to observe strict compliance with the requirements of La. Rev. Stat. § 23:921(C), those provisions are null, void, and unenforceable.

> **2. The tolling provision in Paragraph 3(d) is null, void, and unenforceable beyond two years from the date of termination of Plaintiff's employment with Defendants, pursuant to La. Rev. Stat. § 23:921(C).**

Next, Paragraph 3(d) of the Agreement violates La. Rev. Stat. § 23:921(C) because it purports to toll the twelve (12) month time periods set forth in all of the restrictive covenants in the Agreement and extend them beyond the two-year time limitation provided in the statute. Indeed, Paragraph 3(d) seeks to toll the twelve-month restrictive period and extend it for "any time during which [Plaintiff] is in violation of any provision of this Agreement and any time during which there is pending in any court of competent jurisdiction any action (including any appeal from any final judgment) brought by any person, whether or not a party to this Agreement...." *See* Exhibit 1 at attachment C, ¶ 3(d).

In *Delta Fuel Co., Inc. v. Abbott*, Case No. 18-cv-01334, 2021 WL 259747 (W.D. La. Jan. 25, 2021)*,* the Western District recently rejected the argument that the two-year time limitation in La. Rev. Stat. § 23:921(C) could be tolled or extended beyond two years from termination of employment. The court explained that "the current version of [La. Rev. Stat. § 23:921(C)] expressly commences the two-year limit on non-competition and non-solicitation from 'termination of employment.'" *Id.* at *4  Thus, "[b]ecause [the] statute does not provide that this limit can be extended or tolled, the restriction on competition and solicitation runs for two years from 'the date of termination of employment <u>and no longer</u>.'" *Id.* (citing *Allied Bruce Terminix Companies, Inc. v. Ferrier*, 634 So. 2d 44, 45 (La. Ct. App. 1st Cir. 1994)) (emphasis in original).

Similarly, here, the tolling provision in Paragraph 3(d) violates La. Rev. Stat. § 23:921(C) insofar as it seeks to extend the time limitations of any restrictive covenants in the Agreement beyond two years from the date of Plaintiff's termination of employment with Defendants. As such, Paragraph 3(d) of the Agreement is null, void, and unenforceable.

> **C.    Defendants are equitably estopped from enforcing Paragraph 3(a)(i) of the Agreement.**

Paragraph 9(f) of the Agreement expressly preserves Mr. Jones' rights and remedies that may also be available to him, whether based in law "or in equity."  The Louisiana Supreme Court in *Suire v. Lafayette City–Parish Consolidated Government*, 04–1459, 04–1460, 04–1466, p. 31 (La.4/12/05), 907 So.2d 37, 59, discussed the application of the equitable doctrine of detrimental reliance as follows:

> The doctrine of detrimental reliance is " 'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.' " *Babkow v. Morris Bart, P.L.C*., 1998–0256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423, 427 (quoting *Orr v. Bancroft Bag, Inc*., 29,046 (La.App. 2 Cir. (1/22/97), 687 So.2d 1068, 1070)). To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Lakeland Anesthesia, Inc. v. United Healthcare*

**14**

*of La., Inc.*, 2003–1662 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 393, writ denied, 2004–0969 (La.6/25/04), 876 So.2d 834; *Babkow*, 726 So.2d at 427. Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. *Babkow*, 726 So.2d at 429 (citing *Morris v. People's Bank & Trust Co.*, 580 So.2d 1029 (La.App. 3 Cir.), writ denied, 588 So.2d 102 (La.1991)).

Prior to his resignation from United Rentals and his subsequent employment with EquipmentShare, United Rentals made representations to Mr. Jones that United Rentals could not locate any non-compete agreement. United Rentals even went so far as to make a request to Mr. Jones that he sign a new agreement. Mr. Jones justifiably relied on United Rentals' representations when he decided to change his position, *i.e.* he declined to sign a new agreement and instead resigned and accepted employment with EquipmentShare.

United Rentals has since found the missing Agreement, which includes Paragraph 3(a)(i) that seeks to prevent Mr. Jones from competing against United Rentals for a period of twelve (12) months in East Baton Rouge, Livingston, and Ascension parishes. *See* Exhibit 1 at attachment C, ¶ 3(a)(i). Because Mr. Jones changed his position based on his justifiable reliance on United Rentals' prior representations that it could not locate any non-compete Agreement, United Rentals should be equitably estopped from seeking to place restraints on Mr. Jones' employment with EquipmentShare to the detriment of his livelihood *ex-post facto*. Indeed, Mr. Jones has refrained from performing any work for EquipmentShare in East Baton Rouge, Livingston, or Ascension parishes since receiving Ms. Denney's letter. Not being able to work in these parishes has inhibited Mr. Jones' ability to generate revenue for EquipmentShare, which in turn is having a direct impact on his annual compensation. *Id.* If ever there was a circumstance that warranted the application of the doctrine of detrimental reliance, it is certainly in this case.

In sum, based on principles of equity, more specifically the doctrine of detrimental reliance, Mr. Jones should be permitted to engage in competition in East Baton Rouge, Livingston, or Ascension parishes, notwithstanding the newly discovered Agreement.

## CONCLUSION

Based on the foregoing, there is no genuine issue of material fact that Plaintiff is entitled to judgment as a matter of law. According, Plaintiff's Motion for Summary Judgment should be granted.

          Respectfully submitted,

          **ADAMS AND REESE LLP**

          */s/ Gregory F. Rouchell*
          **GREGORY F. ROUCHELL (#28746)**
          701 Poydras St., Suite 4500
          New Orleans, Louisiana 70139
          Telephone:   (504) 581-3234
          Facsimile:    (504) 566-0210
          gregory.rouchell@arlaw.com
          *Attorney for Plaintiff, Joshua Jones*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 13, 2021, I electronically filed the foregoing *Memorandum in Support of Motion for Summary Judgment* with the Clerk of Court by using the CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants.

          */s/ Gregory F. Rouchell*
          **GREGORY F. ROUCHELL**