EAST BATON ROUGE PARISH
Filed Jun 16, 2021 9:09 AM
Deputy Clerk of Court
FAX Received Jun 14, 2021

C-708666
24

## NINETEENTH JUDICIAL DISTRICT COURT
## FOR THE PARISH OF EAST BATON ROUGE
## STATE OF LOUISIANA

NO:                                                                              DIV.:

**JOSHUA JONES**

**VERSUS**

**UNITED RENTALS (NORTH AMERICA), INC.
AND UNITED RENTALS, INC.**

FILED: _____        _____
                                                                      DEPUTY CLERK

### PETITION FOR DECLARATORY JUDGMENT

**NOW COMES** Joshua Jones who files this Petition for Declaratory Judgment and respectfully avers as follows:

1.

Mr. Jones is a person of the full age of majority and a resident of Tangipahoa Parish, Louisiana.

2.

Made defendant herein is United Rentals (North America), Inc. ("United Rentals (NA)"), a foreign corporation authorized to do business in the State of Louisiana with its principal business establishment located in St. Rose, Louisiana.

3.

Made an additional defendant herein is United Rentals, Inc. ("United Rentals"), a foreign corporation authorized to do business in the State of Louisiana with its principal business establishment located in Baton Rouge, Louisiana.

4.

Venue is proper in this Judicial District pursuant to Articles 42(4), 45, 73, 74, 76.1, and 641 of the Louisiana Code of Civil Procedure.

5.

In August of 2010, Mr. Jones began working at RSC Equipment Rental ("RSC") as an Inside Sales Representative.

EXHIBIT 1

6.

Upon information and belief, RSC was acquired by United Rentals in November of 2011, and thereafter Mr. Jones became an employee of United Rentals NA.

7.

At all times relevant, Mr. Jones resided and worked for United Rentals (NA) in the State of Louisiana.

8.

In early 2021, Mr. Jones began considering a new opportunity with EquipmentShare, a competitor of United Rentals.

9.

On February 25, 2021, Mr. Jones emailed United Rentals' Human Resources Director, Tamara Landry, to request a copy of any non-compete agreements he may have in place with United Rentals. The reason for Mr. Jones' request was so that he could make an informed decision about whether or not he should pursue the new employment opportunity with EquipmentShare. More specifically, Mr. Jones was attempting to diligently evaluate whether he had any restrictive covenants in place with United Rentals that would have a material impact on whether he should pursue the new employment opportunity with EquipmentShare. Copies of Mr. Jones' email communications with United Rentals are attached as Exhibit A and are incorporated herein by reference.

10.

On March 3, 2021, United Rentals' Human Resources Director, Tamara Landry, informed Mr. Jones that United Rentals was "unable to locate your legacy employment agreement with RSC" and, therefore, "we will be asking you to sign a new agreement." *See* Exhibit A.

11.

Relying on United Rentals' representations that it could not locate any agreement or existing restrictive covenants, Mr. Jones concluded that there was no contractual reason why he could not work for EquipmentShare. After weighing his options, Mr. Jones ultimately concluded that it was in his and his family's best interest that he not sign a new agreement with United Rentals, and he should instead resign from his employment with United Rentals and pursue the

new opportunity with EquipmentShare. By March 9, 2021, Mr. Jones had signed an offer letter with EquipmentShare and thereafter began working as a Territory Account Manager based out of Harvey, Louisiana.

12.

On April 8, 2021, Mr. Jones received a letter from Karen C. Denney, an attorney with the law firm of Haynes Boone in Fort Worth, Texas. A copy of the letter is attached as Exhibit B and is incorporated herein by reference.

13.

Enclosed with the letter was a copy of what purports to be an Employment Agreement ("the Agreement") between Mr. Jones and the defendants that was entered into eight (8) years ago on February 18, 2013. A copy of the Agreement is attached as Exhibit C and is incorporated herein by reference.

14.

Relying on the "newly discovered" Agreement, Ms. Denney, on United Rentals' behalf, made several demands on Mr. Jones, including that: "(1) you immediately cease and desist from any violation of your Agreement, including, without limitation, not being employed by a competitor in the Restricted Area; (2) you immediately provide your assigned location, duties and responsibilities related to your new position with EquipmentShare; (3) you immediately return all United Rentals Confidential Information and other property in your possession, including any USB or other device containing any United Rentals Trade Secrets or confidential information, as required by your Agreement, and (4) you contact me before April 12, 2021 and confirm that you have returned all United Rentals Confidential Information and other property in your possession and will comply with your Agreement." *See* Exhibit B.

15.

Mr. Jones is not in possession of or using any of United Rentals' confidential information or trade secrets, as those terms are defined under applicable law.

16.

Ms. Denney, on United Rentals' behalf, also threatened legal action against Mr. Jones: "If you do not comply with your Agreement, United Rentals will be forced to take all necessary

3

actions to preserve its legal rights, including, without limitation, filing a lawsuit against you seeking specific performance, injunctive relief, damages, attorneys' fees, costs, expenses, and all other remedies available to United Rentals in equity and at law." *See* Exhibit B.

17.

Concerned by the tone of the letter and the newly discovered Agreement, Mr. Jones immediately forwarded Ms. Denney's letter to EquipmentShare. EquipmentShare's in-house legal counsel contacted Ms. Denney to educate her on Mr. Jones' prior exchange with United Rentals' Human Resources Director, including the fact that he was informed that United Rentals could not locate any Agreement. A copy of that email exchange is included in Exhibit A and is incorporated herein by reference.

18.

In response, Ms. Denney suggested that just because United Rentals could not locate the Agreement did not negate the fact that there was a noncompetition agreement in place. Ms. Denney also took the position that the onus was actually on Mr. Jones—for a period of eight (8) years—to retain and maintain a copy of the Agreement for his own records.

19.

Mr. Jones has no recollection of ever receiving a copy of the Agreement, and he was not in possession of the Agreement prior to receiving Ms. Denney's letter.

20.

Because United Rentals has threatened litigation and Mr. Jones' livelihood, he files this lawsuit and seeks the assistance of this Honorable Court in determining the parties' legal rights and obligations. To that end, various provisions of the Agreement should be declared unenforceable, null, and void under Louisiana law.

21.

Because at all relevant times Mr. Jones resided and worked in Louisiana, the Agreement is governed by Louisiana law.

22.

Paragraph 9(g) of the Agreement contains a choice of law provision designating Connecticut law as governing the Agreement. This provision is null and void pursuant to La. Rev.

4

Stat. § 23:921(A)(2), which provides: "The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment ... shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action."

23.

Mr. Jones never ratified Paragraph 9(g) of the Agreement.

24.

Paragraph 5(a) contains a forum selection clause providing that the "interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut..." This provision is also null and void pursuant to La. Rev. Stat. § 23:921(A)(2).

25.

Mr. Jones never ratified Paragraph 5(a) of the Agreement.

26.

La. Rev. Stat. § 23:921 governs non-compete and non-solicitation agreements in Louisiana and provides in relevant part:

> "A.(1) *Every contract or agreement*, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, *except as provided in this Section, shall be null and void*. However, every contract or agreement, or provision thereof, which *meets the exceptions as provided in this Section, shall be enforceable.*
> ***
> C. *Any person*, including a corporation and the individual shareholders of such corporation, *who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment...*"

(emphasis added).

27.

Louisiana has historically had a strong public policy against non-compete agreements. *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc.*, 96–1716

(La.7/1/97), 696 So.2d 1373, 1379. This policy of restricting non-competition agreements was based on an underlying desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. *McAlpine v. McAlpine*, 94–1594 (La.9/5/96), 679 So.2d 85, 91. Thus, because such agreements are considered to be in derogation of a common right, they are closely scrutinized and strictly construed against the party seeking their enforcement. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000–1695 (La.6/29/01), 808 So.2d 294, 298.

28.

A non-competition and non-solicitation of customers agreement must specifically name the parishes or municipalities in which the agreement is to have effect. *VarTech Systems, Inc. v. Hayden*, 05-2499, p. 11 (La. App. 1st Cir. 12/20/06), 951 So. 2d 247, 258.

29.

Paragraph 3(a)(ii) of the Agreement seeks to prevent Mr. Jones from soliciting any of United Rentals' customers for a period of twelve (12) months following the termination of Mr. Jones' employment. Paragraph 3(a)(ii) of the Agreement is unenforceable, null, and void under Louisiana law because it fails to list the parishes or municipalities where customer solicitation is prohibited.

30.

Paragraph 3(a)(vi) of the Agreement seeks to prevent Mr. Jones from owning any interest in, being employed by, or providing any services to any competitor of United Rentals. Paragraph 3(a)(vi) of the Agreement is unenforceable, null, and void under Louisiana law because it fails to list the parishes or municipalities where competition is prohibited.

31.

Paragraph 9(f) expressly preserves Mr. Jones' rights and remedies that may also be available to him, whether based in law "or in equity."

32.

Under Louisiana law, "detrimental reliance" is an equitable doctrine that is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.

33.

Prior to his resignation from United Rentals and his subsequent employment with EquipmentShare, United Rentals made representations to Mr. Jones that United Rentals could not locate any non-compete agreement. Mr. Jones justifiably relied on United Rentals' representations when he decided to change his position, *i.e.* he resigned and accepted employment with EquipmentShare. United Rentals cannot now seek to place restraints on Mr. Jones' employment with EquipmentShare to the detriment of his livelihood *ex-post facto*.

34.

Paragraph 3(a)(i) of the Agreement seeks to prevent Mr. Jones from competing against United Rentals for a period of twelve (12) months in East Baton Rouge, Livingston, and Ascension parishes. Based on principles of equity, more specifically the doctrine of detrimental reliance, Mr. Jones should be permitted to engage in competition in those parishes, notwithstanding the newly discovered Agreement.

35.

Paragraph 3(d) of the Agreement seeks to toll the twelve (12) month restrictive period and extend it for "any time during which Employee is in violation of any provision of this Agreement and any time during which there is pending in any court of competent jurisdiction any action (including any appeal from any final judgment) brought by any person, whether or not a party to this Agreement..."

36.

To the extent paragraph 3(d) of the Agreement seeks to extend the period for any restrictive covenants beyond the statutory maximum of two (2) years set forth in La. Rev. Stat. § 23:921, it is unenforceable, null, and void under Louisiana law. *See, e.g. Delta Fuel Co. v. Abbott*, No. 18-CV-01334, 2021 WL 259747 (W.D. La. Jan. 25, 2021).

37.

To the extent paragraph 3(d) of the Agreement seeks to confer rights on any third party other than Mr. Jones and his actual employer, it is unenforceable, null, and void pursuant to La. Rev. Stat. § 23:921, which only authorizes non-compete and non-solicitation agreements between employees and his *employer*.

## DECLARATORY RELIEF

**WHEREFORE**, Plaintiff Joshua Jones prays that after due proceedings are had that there be a declaratory judgment entered in his favor that:

1. The choice of law provision in Paragraph 9(g) of the Agreement is unenforceable, null, and void under Louisiana law.

2. Louisiana law governs the enforceability of  the February 18, 2013 Employment Agreement between Plaintiff and Defendants;

3. The forum selection clause in Paragraph 5(a) of the Agreement is unenforceable, null, and void under Louisiana law;

4. Notwithstanding Paragraph 3(a)(i) of the Agreement, Mr. Jones may lawfully compete against United Rentals in East Baton Rouge, Livingston, and Ascension Parishes based on Louisiana's equitable doctrine of detrimental reliance;

5. Paragraph 3(a)(ii) of the Agreement is unenforceable, null, and void under Louisiana law;

6. Mr. Jones may lawfully solicit any of United Rentals' customers;

7. Paragraph 3(a)(vi) of the Agreement is unenforceable, null, and void under Louisiana law; and

8. Mr. Jones may lawfully compete against United Rentals in any parish or municipality located in Louisiana or elsewhere throughout the world.

Plaintiff also prays for any and all other relief that the Court deems just and equitable.

Respectfully submitted,

**ADAMS AND REESE LLP**

By: _____
Gregory F. Rouchell (Bar #28746)
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
Gregory.Rouchell@arlaw.com
*Attorneys for Plaintiff Joshua Jones*

**PLEASE SERVE:**

United Rentals (North America), Inc.
Through its Registered Agent for Service of Process:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802


**PLEASE SERVE:**

United Rentals, Inc.
Through its Registered Agent for Service of Process:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

---------- Forwarded message ---------
From: **Denney, Karen Coomer** <Karen.Denney@haynesboone.com>
Date: Thu, Apr 8, 2021 at 11:20 AM
Subject: RE: Non Compete
To: Melissa Null <melissa.null@equipmentshare.com>

Melissa,

We do not deny that United Rentals was initially unable to find Mr. Jones's Employment Agreement when he requested it in March 2021. However, as shown by the below email you provided and contrary to your statement in your email, United Rentals never indicated to Mr. Jones that there was no noncompetition agreement between United Rentals and Mr. Jones, but, rather that they were unable to locate his agreement. Moreover, Mr. Jones clearly had the opportunity to maintain in his own records a copy of his Employment Agreement when he signed it in February 2013.

As the Employment Agreement now has been located and provided to EquipmentShare and Mr. Jones, United Rentals demands that Mr. Jones strictly comply with the terms of the Employment Agreement and expects EquipmentShare to ensure that Mr. Jones complies with the Employment Agreement. Please note that, if legal action is necessary to protect United Rentals' interests, United Rentals will seek discovery of documents related to Mr. Jones's noncompliance with his Employment Agreement, regardless of whether such documents are in paper or electronic form (e.g. emails, text messages, etc.). Until this matter is resolved, United Rentals demands that EquipmentShare not destroy any documents or delete any e-mails, text messages, or electronic files that pertain to such matters, including, without limitation, paper and electronic documents and items that relate to Mr. Jones's use of United Rentals' confidential information or solicitation of customers or employees on behalf of EquipmentShare and any services provided to such customers.

Thank you.

Karen

**Karen Denney**
Partner
(t) +1 817.347.6616

**From:** Melissa Null <melissa.null@equipmentshare.com>
**Sent:** Thursday, April 8, 2021 10:46 AM
**To:** Denney, Karen Coomer <Karen.Denney@haynesboone.com>
**Subject:** Fwd: Non Compete

**EXTERNAL:** Sent from outside haynes*boone*

Regarding Mr. Jones - He specifically requested a copy of any agreement he may have signed. He provided information regarding his start date and the company he originally worked for prior to acquisition. He was told United had no agreement and they would need him to sign one. He did not sign any such agreement. It seems

1

EXHIBIT "A"

rather convenient that it's now been located more than a month later and after he (and EquipmentShare) relied on those representations. I've included the relevant emails from United to Mr. Jones below. Despite United's specific representation that it had no agreement with him, are they now going to attempt to enforce the agreement?

Sincerely,

Melissa

**From:** Tamara Landry <tlandry@ur.com>
**Date:** March 3, 2021 at 9:38:47 AM CST
**To:** "Joshua Jones (060)" <jjones6@ur.com>
**Cc:** Mike Sauve <msauve@ur.com>, Jeremiah
Epps <jepps@ur.com>, Tamara Landry
<tlandry@ur.com>
**Subject: RE: Non Compete**

Josh-

Sorry for the delayed response. They were able to locate three other Joshua Jones, but none appear to be your agreement. Since we are unable to locate your legacy employment agreement with RSC we will be asking you to sign a new agreement. Mike and Jeremy will be contacting you sometime this week with the new agreement.

Thanks

**From:** Joshua Jones (060)
**Sent:** Monday, March 1, 2021 7:48 AM
**To:** Tamara Landry <tlandry@ur.com>
**Subject:** Re: Non Compete

RSC in 2011.

Geismar, LA 42E| Cell (504) 201-8060 |
Branch (225) 673-3155| jjones6@ur.com

For Order
Submissions/Inquiries batonrougeSST@ur.com

For added service convenience, please give our UR Control application a try!! Sign up at http://www.unitedrentals.com/URControl-SignUp

United Rentals mission is to deploy the best people, equipment and solutions to enable our customers to safely build a better and stronger future.

On Mar 1, 2021, at 7:47 AM,
Tamara Landry <tlandry@ur.com>
wrote:


Josh-

Did you come over from an
acquisition? If so, which one?


Tamara Landry

Human Resource Director

Cell (713) 569-0724

Fax (888) 792-3126


<image001.jpg>


**From:** Joshua Jones (060)
**Sent:** Thursday, February 25, 2021
4:06 PM
**To:** Tamara Landry
<tlandry@ur.com>
**Subject:** Non Compete


Can you please get me a copy of my
non-compete agreement?


Josh Jones | Outside Sales | United
Rentals – South Louisiana District

Geismar 42E| Cell (504) 201-8060 |
Branch (225) 673-3155 |
jjones6@ur.com


For Order Submissions/Inquiries
batonrougeSST@ur.com


For added service convenience,
please give our UR Control
application a try!!  Sign up at
http://www.unitedrentals.com/URC
ontrol-SignUp

3

# haynes*boone*

April 8, 2021

Joshua Jones
10 Golden Drive
Hammond, Louisiana 70401

*Via email josh_jones1984@yahoo.com*

Re:    *Your Employment Agreement*

Dear Mr. Jones:

This firm represents United Rentals, Inc. and United Rentals (North America), Inc. (collectively "United Rentals" or "Company") in the above-referenced matter. In February 2013, you entered into an Employment Agreement ("Agreement") with United Rentals, a copy of which is enclosed, in which you specifically agreed, among other things, that you would not, for a period of 12 months immediately following the termination of your employment:

  (i)    be employed, retained or otherwise provide any consulting, brokerage, contracting, sales, financial or other services or assistance to any person or entity who or which then engages in the same or substantially similar business as the businesses in which the Company is at any time engaged within the Parishes of Baton Rouge, Livingston and Ascension;

  (ii)   solicit the business of or call upon, or conduct business with any person or entity, or affiliate of any such person or entity, who or which is or was a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company or who was a prospect for a business relationship with the Company for the purpose of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by the Company;

  (iii)  approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of your employment with the Company; or

  (iv)   solicit or encourage any person to leave the employ of the Company.

In your Agreement, you also agreed that, among other things: (a) during and at all times after your employment with United Rentals you will not, directly or indirectly, use, copy, remove, retain, or disclose to any person or entity any Trade Secrets or other Confidential Information;

**Haynes and Boone, LLP**
**Attorneys and Counselors**
301 Commerce Street
Suite 2600
Fort Worth, Texas 76102
T (817) 347-6600
F (817) 347-6650
www.haynesboone.com

EXHIBIT "B"

haynes*boone*

Joshua Jones
April 8, 2021
Page 2

and (b) upon termination of your employment with United Rentals, you would promptly deliver to United Rentals all originals and copies (whether in note, memo or other document form or on video, audio or computer tapes or discs or otherwise) of all confidential or secret information, and all Trade Secrets, products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, field guides, memoranda, lists and other property compiled or produced by you or delivered to you by or behalf of the Company or by its customers (including, but not limited to, customers obtained by you), whether or not confidential, in your possession, custody or control. Your Agreement defines "Trade Secrets" to mean all information not generally known about the business of the Company which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality and from which the Company derives economic value from the fact the information is not generally known to others who can obtain economic value from its disclosure or use, and shall include any and all Confidential Information which may be protected as a trade secret under any applicable law, even if not specifically designated as such. Your Agreement defines "Confidential Information" to include, but not be limited to, the Company's Trade Secrets; business, pricing and management methods; finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions; arrangements with, preferences, pricing history, transaction history, identity of internal contacts or other proprietary business information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company; technical information, work products and know-how; and cost, operating, and other management information systems, and other software and programming.

In your Agreement, you also agreed that you would not make any oral or written defamatory or recklessly malicious statements, or take any actions, which could disparage or denigrate the Company or its current or former officers, directors, employees, products or services.

You have advised United Rentals that you have accepted an Outside Sales Representative position with EquipmentShare.com Inc. ("EquipmentShare"), which is a competitor of United Rentals. Section 3(c) of your Agreement requires that you, before taking any position with any person or entity during the 12-month period following the termination of your employment with the Company, give prior written notice to United Rentals of the name and address of such person.

United Rentals demands that you strictly comply with all portions of your Agreement.

**haynes***boone*

Joshua Jones
April 8, 2021
Page 3

United Rentals demands that (1) you immediately cease and desist from any violation of your Agreement and comply with all requirements of your Agreement, including, without limitation, not being employed by a competitor in the Restricted Area; (2) you immediately provide your assigned location, duties and responsibilities related to your new position with EquipmentShare; (3) you immediately return all United Rentals Confidential Information and other property in your possession, including any USB or other device containing any United Rentals Trade Secrets or Confidential Information, as required by your Agreement, and (4) you contact me before April 12, 2021 and confirm that you have returned all United Rentals Confidential Information and other property in your possession and will comply with your Agreement.

If you do not comply with your Agreement, United Rentals will be forced to take all necessary actions to preserve its legal rights, including, without limitation, filing a lawsuit against you seeking specific performance, injunctive relief, damages, attorney's fees, costs, expenses and all other remedies available to United Rentals in equity and at law.

This letter is sent without prejudice to or waiver of any claims or defenses that United Rentals may have or may assert.

Very Truly Yours,

*/s/ Karen Denney*

Karen C. Denney
Direct Phone Number: (817) 347-6616
Direct Fax Number: (817) 348-2327
karen.denney@haynesboone.com

## EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") between UNITED RENTALS (NORTH AMERICA), INC., having an office at 13249 Airline Hwy., Gonzales, LA. 70737 (the "Branch Address"), UNITED RENTALS, INC., a Delaware corporation, having a principal place of business at Five Greenwich Office Park, Greenwich, CT 06831 (United Rentals, Inc., and all of its affiliates shall collectively be referred to herein as the "Company"), and JOSHUA JONES ("Employee") is hereby entered into as of February 18, 2013.

Recitals:

The Company engages in the business of renting and selling equipment and merchandise to the commercial and general public, including construction equipment, earthmoving equipment, aerial equipment, aerial work platforms, traffic safety equipment, trench safety equipment, industrial equipment, landscaping equipment, and home repair and maintenance equipment, as well as highway construction related technologies and the buying of companies that engage in such activities along with the computer hardware and software systems designed, developed and utilized with respect to any of the foregoing. The Company may in the future also engage in other businesses. The businesses in which the Company is at any time engaged, to any extent, are collectively referred to as the "Business."

Employee is or will be employed by the Company in a confidential relationship. Immediately upon Employee's execution of this Agreement and on an ongoing basis, the Company will give Employee Trade Secrets (defined below) and Confidential Information (defined below) which were established and maintained at great expense to the Company. The parties agree that the Company's Trade Secrets and Confidential Information (collectively, "Trade Secrets") are a trade secret and constitute valuable goodwill of the Company. The parties agree that protection of these Trade Secrets is of critical importance to the Company.

The Company will make substantial economic investment in the employment, education and training of Employee. The Company will sustain great loss and damage if Employee should violate the provisions of this Agreement. Monetary damages for such losses would be extremely difficult to measure.

NOW, THEREFORE, in consideration of the Company's promise to provide Employee with confidential Company information and data (such as InfoManager®, URdata®, and RentalMan® data), the education, training, compensation and benefits provided to Employee, the Company's agreement to Section 3.1, and the Company's transfer and employment of Employee pursuant to the terms in this Agreement, Employee hereby agrees and acknowledges that sufficient consideration is being granted in exchange for the terms and provisions contained herein, including, but not limited to, the non-compete provisions contained in Section 3 hereof, and the assignment provision set forth in Section 9(c), hereof. For the mutual promises, terms, covenants and conditions set forth herein and the performance of each, it is hereby agreed as follows:

1. **Employment At Will; Full Time, Etc.**

    (a) Employee is employed on at-will basis. His or her employment may be terminated by the Company or by the Employee, at any time, for any reason, without notice or cause.

    (b) During his or her employment, Employee shall devote his or her full time, attention and use best efforts to promote and further the business and services of the Company. Employee shall faithfully adhere to, execute and fulfill all policies established by the Company. Employee shall not, during his or her employment, be engaged in any other business activity pursued for gain, profit or other pecuniary advantage without the prior written consent of the Company.

    (c) All funds received by Employee on behalf of the Company, if any, shall be held in trust for the Company and shall be delivered to the Company as soon as practicable.

    (d) The Company shall reimburse Employee for properly documented expenses that are incurred by Employee on behalf of the Company in accordance with Company policies in effect from time to time.

    (e) Employee agrees and acknowledges that if Employee is eligible to receive commissions, bonuses or other incentive pay (referred to collectively as "Incentive Compensation"), such Incentive Compensation, if any, shall be calculated in accordance with the applicable Company policies, procedures and/or plans that are in effect at that time. Employee understands and agrees that it is

1

EXHIBIT "C"

his or her responsibility to review such policies, procedures and/or plans as needed to ensure his or her comprehension. Employee agrees to raise any questions he or she has about such policies, procedures and/or plans with his or her supervisor or the Human Resources department. Employee further agrees and acknowledges that all applicable Company policies, procedures and/or plans may be revoked or amended at the Company's sole discretion and at any time without advance notice to Employee.

2. **Trade Secrets; Confidentiality and Company Property.** Immediately upon Employee's execution of this Agreement and on an ongoing basis, the Company will give Employee the Company's Trade Secrets and Confidential Information. "Trade Secrets" shall mean all information not generally known about the business of the Company which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality and from which the Company derives economic value from the fact that the information is not generally known to other persons who can obtain economic value from its disclosure or use, and shall include any and all Confidential Information (as defined below) which may be protected as a trade secret under any applicable law, even if not specifically designated as such. Unless told otherwise, Employee shall treat all Confidential Information (as defined below) as Trade Secrets. During and at all times after Employee's employment:

    (a)    Employee will not use or disclose to any person or entity, without the Company's prior written consent, any confidential or secret information or Trade Secrets, whether prepared by him/her or others, except as necessary during Employee's employment with the Company to perform services on behalf of the Company.

    (b)    Employee will not use any Trade Secret or Confidential Information (as defined below) in order to solicit or call upon any person or entity.

    (c)    Employee will not directly or indirectly use any Trade Secrets or Confidential Information other than as directed by the Company in writing.

    (d)    Employee will hold all Trade Secrets and Confidential Information of the Company in trust for the Company and will not use the information for any purpose other than the benefit of the Company.

    (e)    Employee will take reasonable steps to safeguard such Trade Secrets and Confidential Information and prevent its disclosure to unauthorized persons.

    (f)    Employee will not, except in the furtherance of the business of the Company, remove confidential or secret information, including Trade Secrets, from the premises of the Company without the prior written consent of the Company.

    (g)    All Trade Secrets, products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, "field guides," memoranda, lists and other property compiled or produced by Employee or delivered to Employee by or on behalf of the Company or by its customers (including, but not limited to, customers obtained by the Employee), whether or not confidential, shall be and remain the property of the Company and shall be subject at all times to its direction and control.

    (h)    Employee will, upon termination of his or her employment for whatever reason, with or without cause, promptly deliver to the Company all originals and copies (whether in note, memo or other document form or on video, audio or computer tapes or discs or otherwise) of all confidential or secret information, and of all property referred to in Section 2(g), that is in his or her possession, custody or control, and whether prepared by Employee or others.

    (i)    "Confidential Information" includes, but is not limited to:

        (i)    business, pricing and management methods;

        (ii)    finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

2

(iii)   arrangements with, preferences, pricing history, transaction history, identity of internal contacts or other proprietary business information relating to, the Company's customers, equipment suppliers, manufacturers, financers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;

(iv)   technical information, work products and know-how;

(v)   cost, operating, and other management information systems, and other software and programming;

(vi)   the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects; and

(vii)   the Company's Trade Secrets.

3.    Non-Compete Provisions.  The following covenants are made by Employee in consideration for the Company's promise to provide Employee with Trade Secrets and Confidential Information, the substantial economic investment made by the Company in the employment, education and training of Employee and the compensation and other benefits afforded by the Company to the Employee. Such covenants were material inducements to the Company's decision to invest in Employee and give Employee the Company's Trade Secrets and Confidential Information.

(a)   During Employee's employment by the Company and for a period of 12 months immediately following the termination of employment for any reason whatsoever, (whether for cause, by resignation or otherwise) Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):

(i)   In any Restricted Area, be employed, retained, or otherwise provide any consulting, brokerage, contracting, sales, financial or other services or assistance to any person or entity who or which engages in a Competing Business. For purposes of this Agreement, a "Competing Business" is one which engages in the same or substantially similar business as the Company's Business. For purposes of this Agreement, the term "Restricted Area" shall mean the Parishes of: East Baton Rouge, Livingston, and Ascension.

(ii)   solicit the business of, or call upon, or conduct business with any person or entity, or affiliate of any such person or entity, who or which is or was a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company or who was a prospect for a business relationship with the Company at any time during the period of Employee's employment, for the purpose of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by the Company;

(iii)   approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of Employee's employment by the Company. Nothing in this section restricts employees from engaging in protected activities with other employees concerning their wages, hours, and working conditions as set forth in Section 7 of the National Labor Relations Act.

(iv)   solicit or encourage any person to leave the employ of the Company;

(v)   call upon or assist in the acquisition of any company which was, during the term of this Agreement, either called upon by an employee of the Company or by a broker or other

3

third party, for possible acquisition by the Company or for which an employee of the Company or other person made an acquisition analysis for the Company, and with which Employee was involved or of which Employee had knowledge; or

(vi)    own any interest in or be employed by or provide any services to any person or entity, which engages in any Competing Business.

(b)    Employee shall be deemed to be engaging in a Competing Business in the Restricted Area if Employee (A) uses any telecommunication equipment or device (including without limitation any telephone, modem, intranet or extranet, internet or satellite communications device) that is physically located in the Restricted Area to communicate with any person, whether or not such other person is physically located in the Restricted Area, (B) uses any telecommunication equipment or device (including without limitation any telephone, modem, intranet or extranet, internet or satellite communications device) located outside the Restricted Area to communicate with any person located in the Restricted Area, (C) has an office in the Restricted Area, or (D) renders any advice with respect to any facility or business activities in the Restricted Area.

(c)    Before taking any position with any person or entity during the 12 month period following the termination of his or her employment for any reason, with or without cause or by resignation, Employee will give prior written notice to the Company of the name and address of such person or entity. Irrespective of whether such notice is given, the Company shall be entitled to advise each such person or entity of the provisions of this Agreement, and to correspond and otherwise deal with each such person or entity to ensure that the provisions of this Agreement are enforced and duly discharged. Employee acknowledges that Employee has not signed a confidentiality, non-competition or non-solicitation agreement with any former employer that by its terms remains in effect.

(d)    All time periods in this Agreement shall be computed by excluding from such computation any time during which Employee is in violation of any provision of this Agreement and any time during which there is pending in any court of competent jurisdiction any action (including any appeal from any final judgment) brought by any person, whether or not a party to this Agreement, in which action the Company seeks to enforce the agreements and covenants in this Agreement or in which any person contests the validity of such agreements and covenants or their enforceability or seeks to avoid their performance or enforcement.

(e)    Employee understands that the provisions of this Agreement have been carefully designed to restrict his or her activities to the minimum extent that is consistent with law and the Company's requirements. Employee has carefully considered these restrictions, and Employee confirms that they will not unduly restrict Employee's ability to obtain a livelihood. Employee has heretofore engaged in businesses other than the Business. Before signing this Agreement, Employee has had the opportunity to discuss this Agreement and all of its terms with his or her attorney. Employee acknowledges that the Company gave him sufficient consideration in exchange for Employee's promises in this Agreement, including Employee's promises in this Section 3 and the assignment provisions in Section 9(e).

(f)    Since monetary damages will be inadequate and the Company will be irreparably damaged if the provisions of this Agreement are not specifically enforced, the Company shall be entitled, among other remedies (i) to an injunction restraining any violation of this Agreement (without any bond or other security being required) by Employee and by any person or entity to whom Employee provides or proposes to provide any services in violation of this Agreement, (ii) to require Employee to hold in a constructive trust, account for and pay over to the Company all compensation and other benefits which Employee shall derive as a result of any action or omission which is a violation of any provision of this Agreement and (iii) to require Employee to account for and pay over to the Company any net profit earned by the Employee from the exercise and/or vesting, during the 24 month period prior to the termination of his or her employment, of any stock options and/or restricted stock issued to him/her by the Company.

4

(g)    The courts enforcing this Agreement shall be entitled to modify the duration and scope of any restriction contained herein to the extent such restriction would otherwise be unenforceable, and such restriction as modified shall be enforced.

3.1    <u>Salary Continuation Payments.</u>



4. `Inventions and Intellectual Property.` Employee shall promptly disclose to the Company any and all conceptions and ideas for inventions, improvements and valuable discoveries, whether patentable or not, which are conceived or made by Employee, solely or jointly with another, during or after regular hours of employment, during the period of employment or within one year thereafter, and which are related to the business or activities of the Company or which Employee conceives as a result of his or her employment by the Company, and Employee hereby assigns and agrees to assign all Employee's interests therein to the Company or its nominee. Employee also agrees that all works created by him/her are considered work made for hire and prepared by Employee within the scope of his/her employment by the Company and Employee further agrees to assign, and hereby does assign automatically, all such future work to the Company. Whenever requested to do so by the Company, Employee shall execute any and all applications, assignments or other instruments that the Company shall deem necessary to apply for and obtain Letters of Patent or Copyright of the United States or any foreign country or to otherwise protect the Company's interest therein. These obligations shall continue beyond the termination of employment with respect to inventions, improvements and valuable discoveries, whether patentable or not, conceived, made or acquired by Employee during the period of employment or within one year thereafter, and shall be binding upon Employee's assigns, executors, administrators and other legal representatives.

5. Jurisdiction, Arbitration & Attorney's Fees.

   (a)  Consent to Personal Jurisdiction. Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose. Employee hereby acknowledges that, in the performance of his or her duties, Employee will maintain significant contacts with the Company's corporate offices in Connecticut, including, without limitation, telephone and email contacts with corporate personnel, access to corporate databases maintained in Connecticut, required attendance at certain training and/or strategic meetings, and payment of business related travel and entertainment expenses.

   (b)  Waiver of Jury Trial. Employee agrees to waive a trial by jury in all legal disputes brought pursuant to this Agreement.

   (c)  Waiver of Service. Employee agrees to waive formal service of process under any applicable federal or state rules of procedure. Service of process shall be effective when given in the manner provided for notices hereunder.

   (d)  Arbitration of Certain Claims by Employee.

        (i)  Except for matters referred to in Section 5(a), any and all claims by Employee relating to any matter arising during or after the employment of the Employee by Company or in connection with the cessation of said employment shall be resolved exclusively by arbitration conducted by one arbitrator in accordance with the Employment Arbitration Rules and Mediation Procedures established by the American Arbitration Association (AAA). The Company will provide a copy of these Rules to Employee on request. The decision of the arbitrator will be final and binding on both parties.

        (ii)  The claims and disputes to be arbitrated under this Section 5(d) ("Arbitrable Claims") include without limitation, disputes or claims arising under (A) federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, (B) the law of contract and (C) the law of tort.

        (iii)  No Arbitrable Claim may be initiated or maintained on a putative or certified class, collective or multi-party action basis either in a court or in Arbitration. Any Arbitrable

6

Claim purporting to be brought as a putative or certified class, collective or multi-party action basis will be decided under these rules as an individual claim in Arbitration.

(iv)     No language in this document is intended to limit in any way Employee's rights under the National Labor Relations Act ("NLRA"), and any claims under the NLRA are specifically excluded from the arbitration provisions described above.

(e)     Attorneys' Fees. If Employee breaches any of the covenants set forth in this Agreement, Employee agrees to pay all costs (including reasonable attorneys' fees) incurred by the Company in establishing that breach and in otherwise enforcing any of the covenants or provisions of this Agreement.

6.  Suits Against Company.

(a)     Both during and after the term of employment hereunder, Employee covenants that Employee will not bring suit or file counterclaims against the Company, for corporate misconduct (which for this purpose does not mean matters for which Employee has a personal claim against the Company in his or her capacity as an employee), unless both of (i) and (ii) shall have occurred, namely:

(i)     Employee shall have first made written demand to the Company's Board of Directors to investigate and deal with such misconduct, and

(ii)     The Board of Directors shall have failed within 45 days after the date of receipt of such demand to establish a Special Litigation Committee, consisting exclusively of outside directors, to investigate and deal with such alleged misconduct.

(b)     Without limiting the generality and to further implement the foregoing, Employee irrevocably and unconditionally consents at the option of the Company to the entry of temporary restraining orders and temporary and permanent injunctions (without posting bond or other security) against the filing of any action or counterclaim that is prohibited hereunder.

(c)     The opinion of the Board of Directors shall be binding and conclusive on the determination of which directors constitute "outside directors," and the determination of the Special Litigation Committee shall be binding and conclusive on all matters relating to the actual or alleged misconduct which is referred to it as aforesaid.

7.  Cooperation in Proceedings. During and after the termination of Employee's employment, Employee will cooperate fully and at reasonable times with the Company and its subsidiaries in all litigations and regulatory proceedings on which the Company or any subsidiary seeks Employee's assistance and as to which Employee has any knowledge or involvement. Without limiting the generality of the foregoing, Employee will be available to testify at such litigations and other proceedings, and will cooperate with counsel to the Company in preparing materials and offering advice in such litigations and other proceedings. If Employee is not then employed by the Company, the Company shall pay to Employee reasonable compensation for documented time spent in such cooperation, consistent with his or her compensation from the Company prior to termination. Except as required by law and/or related to an investigation by a government agency, Employee will not in any way cooperate or assist any person or entity in any matter which is adverse to the Company or to any person who was at any time an officer or director of the Company.

8.  Non-Disparagement. Except as may be compelled by law or as authorized in writing by the Company, during and at all times after Employee's employment with the Company, Employee shall not make any oral or written defamatory or recklessly malicious statements, nor take any actions, which could disparage or denigrate: a) the Company or any of its subsidiaries; b) any of the Company's current or former officers, directors or employees; and/or c) the Company's products or services.

9.  Miscellaneous.

(a)     This Agreement is not a promise of employment. There are no oral representations, understandings or agreements with the Company or any of its officers, directors or representatives

7

covering the same subject matter as this Agreement. This written Agreement is the final, complete and exclusive statement and expression of the agreement between the Company and Employee and of all the terms of this Agreement, it cancels and supersedes all prior agreements with respect to the subject matter hereof, and it cannot be varied, contradicted or supplemented by evidence of any prior or contemporaneous oral or written agreements. This written Agreement may not be later modified except by a further writing signed by the Company and Employee, and no term of this Agreement may be waived except by a writing signed by the party waiving the benefit of such terms.

(b)    No waiver by the parties hereto of any default or breach of any term, condition or covenant of this Agreement shall be deemed to be a waiver of any subsequent default or breach of the same or any other term, condition or covenant contained herein.

(c)    This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective heirs, legal representatives, successors and permitted assigns. Employee may not assign either this Agreement or any of Employee's rights, interests or obligations hereunder. Employee hereby agrees and acknowledges that the Company may assign any or all of its rights and interest hereunder, including, but not limited to, Employee's agreements contained in Section 2 and Section 3 hereof, without the consent of Employee, to any person or entity that acquires any of the assets of the Company, or to any affiliate of the Company, or to any entity with which the Company merges or consolidates.

(d)    Whenever any notice is required hereunder, it shall be given in writing addressed as follows;

To the Company:        United Rentals (North America), Inc.
                       Addressed to the Branch Address listed above
                       Attn: Branch Manger

    With a copy to;        United Rentals, Inc.
                       Five Greenwich Office Park
                       Greenwich, CT 06831
                       Attn: Legal Department

To Employee:            To the home address Employee last provided to the
                       Company's Human Resources department

Notice shall be deemed effective: (a) five business days after the document is deposited in the U.S. mail (provided it is sent via first class mail, certified, return receipt requested); (b) one business day after the document is delivered to a nationally recognized air courier for next day delivery; and/or (c) upon personal delivery. Either party may change the address for notice by notifying the other party of such change in accordance with this paragraph.

(e)    If any section, provision or clause of this Agreement, or any portion thereof, is held void or unenforceable, the remainder of such section, provision or clause, and all other sections, provisions or clauses of this Agreement, shall remain in full force and effect as if the section, provision or clause determined to be void or unenforceable had not been contained herein. The paragraph headings herein are for reference purposes only and are not intended in any way to describe, interpret, define or limit the extent or intent of this Agreement or any part hereof.

(f)    All rights and remedies of either Party expressly set forth herein are intended to be cumulative and not in limitation of any other right or remedy set forth herein or otherwise available to such party at law or in equity. Notwithstanding the foregoing, in no event shall either party be liable to the other for consequential or punitive damages, except as otherwise provided in this Agreement.

(g)    This Agreement shall in all respects be constructed according to the laws of the State of Connecticut, without regard to its conflict of laws principles.

(h)    This Agreement may be executed by facsimile and/or in any number of counterparts, each of which upon execution and delivery shall be considered an original for all purposes; provided, however,

8

all such counterparts shall, together, upon execution and delivery, constitute one and the same instrument.

UNITED RENTALS, INC.

BY: _____

NAME: Steve Vivet

TITLE: Branch Manager

UNITED RENTALS (NORTH AMERICA), INC.

BY: _____

NAME: _____

TITLE: _____

EMPLOYEE:

_____

JOSHUA JONES

9